**CARDINAL, Plaintiff-Appellee, v. DIMIT, et, Defendants-Appellants.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3042. Decided June 8, 1945.

H. L. Kattman, Sebring, and Oscar A. Stephens, Youngs-town, for plaintiff-appellee.

Blumenstiel, Strong & Blumenstiel, Alliance, for defendants-appellants.

**OPINION**

By PHILLIPS, J.

On and for six consecutive years prior to August 7, 1941,

plaintiff, an unmarried woman, was a teacher in the public supported schools of the Village of Sebring, Ohio. On that date she was married.

In accordance with the provisions of §7690-2 (now §4842-8) GC, and without knowledge of her marriage on August 7, 1941, defendant Board of Education entered into a continuing contract with plaintiff on September 3, 1941, (which she signed in her maiden name) to teach in such schools for the school year 1941-1942 at a salary of $1475.10 per annum.

That contract provided inter alia as follows:—

"This contract is made with the provision that if a lady teacher is married during the life of the same, it thereupon becomes void."

Plaintiff taught the entire school year 1941-1942 performing all the duties of such position. On December 27, 1941, she advised the superintendent of such school system of her marriage.

Plaintiff testified that when she advised Superintendent Pollock of her marriage "Mr. Pollock, that was the superintendent, it was his suggestion that I teach until the end of the year. I didn't resign and so I agreed to that. It was also his suggestion that it be at substitute wages. I didn't apply for substitute work and I agreed to that with the provision that if in the meantime some court decision clarified the tenure matter I would then receive my entire salary;" that she was' familiar with the quoted rule of the contract she signed, and that Superintendent Pollock did not mention to her that "he considered" her "contract broken at that time, that was at a later meeting."

Superintendent Pollock testified that when he was advised of plaintiff's marriage he said, "well, that means we will have to look for a new teacher, that breaks your existing contract." "Then asked her" "would you want to continue the balance of this year as a substitute techer?" That "he couldn't recall just exactly the words. The substance was she would like to finish the year." That he said to her "that she would be helping them out if she would teach because it would be hard to get a teacher and the children would suffer."

The record discloses that on January 5, 1942 "motion was made by Mrs. Reddy and seconded by Mr. Herman that we (defendant The Board of Education of the Village of Sebring) employ Mrs. Esther Cardinal (formerly Esther Kuntzman) as

a substitute teacher for the balance of the school year starting as of January 5, 1942, unless the court should decide to the contrary on the tenure matter;" that on May 14, 1942, plaintiff was advised in writing by defendant Board that her "teacher's contract" was revoked and terminated for "violation of the marriage clause in said contract" and for "use of name in signing the teacher's contract other than your (her) proper legal name, and concealment of your (her) marriage at the execution of said contract;" that the difference in the amount of salary plaintiff would have received as a regular teacher under her contract and that which she received as a substitute teacher was $657.10.

Plaintiff sued defendant in the court of common pleas for the recovery of that amount, and a judge of that court to whom the case was submitted, upon waiver of trial by jury, entered judgment in her favor in that amount.

Defendant appealed from that judgment to this court on questions of law.

Plaintiff claims that "the only question on which this entire lawsuit is based is the manner in which a Board of Education may terminate a continuing contract of a teacher."

In a word defendant contends that "though they subsequently complied with the provisions of the Teacher's Tenure Act these sections of Ohio law are not involved and material to the determination of the issues of this lawsuit. The suit is upon a contract and the general law of contract applies;" that the elements of a valid contract were not present in the contract executed on September 3, 1941, that there was no meeting of the minds of the parties; that plaintiff's fraud in failing to disclose her marital status at the time she signed the contract vitiated and voided "any such attempted contract;" that the quoted provision of the contract with reference to marriage of a woman teacher during the life of the contract voided plaintiff's contract; that "plaintiff's conduct in disclosing her marital status during the Christmas vacation and her aceptance of 'substitute employment' as authorized by a resolution of the Board of Education" amounted "in law to a resignation of her former employment as a regular teacher;" that "strict compliance with the mode of termination of a continuing" contract "thereunder, is not an issue in this case."

"Under the first proviso of §7690-2 GC, a certificated female teacher completing five or more continuous years of em-

ployment by a board of education was entitled to the tender of a continuing contract from such board on September 1, 1941, or within a reasonable time thereafter, even though she was then married and there was a rule of the board in force against the employment or retention of married women teachers." **State, Ex Rel. Bishop v. Board of Education, State, Ex Rel. Creig v Board of Education, State, Ex Rel. Lynch v Board of Education, State, Ex Rel Brown v Board of Education, 139 Oh St 427, syl 7**. See **P 436** with reference to case of Brown v Board of Education.

Since the Brown case compelled defendant board to enter into a continuing contract with plaintiff regardless of the fact that she was then married and regardless of the fact that the board had a rule against the employment of married women teachers it seems apparent that her failure to disclose her marital status at the time the continuing contract was executed was not such material fraud as to vitiate her contract. It is well recognized in the law of contracts that fraud sufficient to void a contract must relate to a material matter in the contract.

The court reaches the conclusion that the quoted syllabus in the case of State, Ex Rel. Brown, v Board of Education, supra, answers all of defendant's contentions quoted heretofore save and except that plaintiff resigned as a regular teacher and accepted employment as a substitute teacher, and that strict compliance with the mode of termination of a continuing contract "is not in issue in this case."

We dispose of the first excepted contention by saying that the question whether plaintiff resigned as a regular teacher and accepted employment as a substitute teacher under the conflicting evidence presented a question for the determination of the trial judge, whose finding and judgment on that question we cannot disturb.

This conclusion brings us to a consideration of the question of the necessity of defendant's strict compliance with the statutes governing termination of a continuing contract.

Defendant's right to terminate plaintiff's contract upon the facts presented in this case is settled in Ohio. See **Margaret Butler Greco v John Roper, et al, 145 Oh St, 243**.

"The contract of a teacher may not be terminated except for gross inefficiency or immorality; for wilful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. Before termin-

ating any contract, the employing board of education shall furnish the teacher a written notice signed by its clerk of its intention to consider the termination of his contract with full specification of the ground or grounds for such consideration * * *." §4842-12 GC.

We find that defendant did not comply with the provisions of the foregoing statute until May 14, 1942, when it served upon plaintiff the notice to which reference is made in the factual statement of this opinion, and that defendant had to comply strictly with the provisions of §4842-12 GC.

The reasonably short record in this case has been read and all assigned errors considered. As a result thereof the conclusion is reached that the trial judge did not err prejudicially to the defendant in any respect urged by it.

The judgment of the court of common pleas is affirmed.

NICHOLS, P. J., CARTER, J., concur in judgment.

NICHOLS, P. J., concurring.

I concur in the affirmance of the judgment of the Common Pleas Court. It is apparent to me that the Superintendent of Schools did not have authority to discharge the teacher. It is further apparent that in adopting the resolution of January 5, 1942, the Board of Education did not terminate or intend to terminate the teacher's continuing contract. That resolution specifically states that the action of the board is contingent or dependent upon the decision of the Supreme Court in an action then pending there involving the right of a teacher to such contract even though the teacher be married and the board have a rule against the employment of married teachers.

The case then pending was evidently that of State, ex rel., Brown, v Board of Education, 139 Oh St., 436. The Supreme Court decided that case in favor of the married teacher on March 25, 1942, and thereafter the board of education on May 14, 1942, took the steps required by statute for the termination of this teacher's contract.

The case of Greco v Board of Education, 145 Oh St, 243, had not been instituted in the courts at that time and could not have been the case referred to by the board in adopting its resolution or by the teacher in her testimony as to what occurred when she disclosed to the Superintendent of Schools the fact of her marriage.

This court held in the Greco case, and our decision was affirmed by the Supreme Court, that the board of education could lawfully adopt the rule against the employment of married teachers and enforce such rule by following the statutory procedure to terminate a teacher's contract for violation thereof. This the appellant in this case did not do until appellee had performed all of the duties of a teacher in the schools of defendant for the year involved in this litigation. The board has the option to enforce such rule but is not required so to do.

It appears to me that the board of education, under the circumstances shown by the record in this case, waived its right to consider the contract terminated at the time the teacher disclosed her marital status and did not avail itself of its statutory right to terminate the contract until all of appellee's services had been performed and the board had received the benefit thereof.

CARTER, J., concurring.

I am of the view that the decision or case referred to in the testimony of plaintiff and as found in the resolution of the Board refers to the **Bishop case, 139 Oh St, 427,** wherein the court held:—

"Under the first proviso of §7690-2, GC, a certificated female teacher completing five or more continuous years of employment by a board of education was entitled to the tender of a continuing contract from such board on September 1, 1941, or within a reasonable time thereafter, even though she was then married and there was a rule of the board in force against the employment or retention of married women teachers." Syllabus 7.

While fraud is claimed in the securing of the contract by concealment of her married status such could hardly be successfully maintained when as held in the Bishop case it was the mandatory duty of the board to enter into a continuing contract whether the teacher was at the time married or unmarried.

It would make no difference whether she signed the contract as Kuntzman or Cardinal as the contract is to be issued to the individual who qualifies for a continuing contract. The law cannot condemn that which it authorizes or sanctions.

Now as to the rule and provision in the contract as to non-employment of married female teachers. The Board waived that provision when it passed the resolution to the effect:—

"Motion was made by Reddy and seconded by Herman that we employ Mrs. Esther Cardinal as a substitute teacher for the balance of the school year as of January 5, 1942, **unless the court should decide to the contrary on the tenure contract.**" (Underscoring Mine.)

Plaintiff testifies that if the case went in favor of the teachers she would receive her full salary instead of substitute pay. The Bishop case was decided favorable to the teachers as found in paragraph seven of the syllabi.

The members of the board must have had something in contemplation when they passed the resolution containing the language as above indicated. From the evidence I am of the view that if the teachers were successful in the Bishop case plaintiff in that event was entitled to full pay as a regular and not as a substitute teacher. Had the board desired to terminate the contract entered into on account of marriage contrary to the rules of the board it might have done so. This it did not do but made arrangements with plaintiff as above indicated.

For these reasons the judgment of the common pleas court must be affirmed.