GENERAL MOTORS ACCEPTANCE CORPORATION, CROSS-APPELLEE, *v.* GRADY, APPELLEE AND CROSS-APPELLANT; AL THOMPSON CHEVROLET, INC., APPELLANT AND CROSS-APPELLEE.

(Nos. 12006 and 12007 — Decided October 30, 1985.)

*L.A. Seikel, Jr.,* for General Motors Acceptance Corp.

*John P. Quinn, Jr.,* for Connie R. Grady.

*Jeffrey J. Casto,* for Al Thompson Chevrolet, Inc.

BAIRD, J. This cause came before the court upon an appeal by the third-party defendant, Al Thompson Chevrolet, Inc. ("Thompson"), and a

cross-appeal by the third-party plaintiff, Connie R. Grady.

Thompson appeals the judgment of the trial court against it, and in favor of Grady, in the amount of $3,676. Grady appeals the judgment of the trial court against her, and in favor of General Motors Acceptance Corporation ("GMAC"), in the amount of $3,115. We affirm as modified.

On or about December 21, 1982, Grady purchased a 1982 Chevrolet Chevette from Thompson. The transaction was memorialized in a purchase order and a retail installment sales agreement. Grady gave a down payment to Thompson and financed the remainder of the purchase price.

Grady picked the car up on December 22, 1982. The next day the car broke down and had to be towed to Thompson. Grady picked the car up on December 24, 1982. The car's performance was still unsatisfactory: the engine was hard to start, the transmission slipped, the brakes had to be pushed to the floor to function, and the brake light on the dashboard came on. Grady returned the car to Thompson on January 6, 1983, for servicing. When she picked up the car that evening, the car started but the engine and brake lights came on. Grady telephoned Thompson again to report the car's poor performance: the car had no pep and the transmission slipped. The car had to be towed on January 17, 1983, because it would not start. Grady picked up the car from Thompson on January 17. The problems with the car persisted: the dash was squeaking, trim was coming off, and the brake problem continued. Grady attempted to take the car to Thompson's place of business for servicing, but she was told to make an appointment. An employee of Thompson told Grady that the testing computer showed that the car was running properly, and there was not much they could do about it.

The car was towed to Thompson on February 21, 1983. When Grady picked up the car later that day, it still had the same problems. Attempts to work out the car's problems with Thompson proved fruitless. By letter dated March 3, 1983, Grady informed Thompson that she was revoking the sale. Grady made one payment on the retail installment, sales agreement and then ceased making payments on the car. Thompson had assigned the retail installment sales agreement covering Grady's car to GMAC.

GMAC filed suit to recover the car due to Grady's refusal to make further payments. The car was repossessed by GMAC and sold at auction. GMAC then instituted suit to recover the deficiency owing on the agreement after application of the proceeds of the sale of the car. Grady counterclaimed against GMAC and filed a third-party complaint against Thompson.

After a trial to the court, a judgment was returned against Grady in favor of GMAC and against Thompson in favor of Grady. The instant appeals were timely perfected.

Thompson's Assignment of Error I

"The trial court erred in awarding judgment against appellant since all warranties of merchantability and fitness for a particular purpose were properly disclaimed."

At the time Grady purchased her car from Thompson, she, and a representative of Thompson, signed a purchase order form and a retail installment sales contract. Printed in red ink on the purchase order are the following words:

"* * * [A]ll terms and conditions of this sale are contained on this and reverse side and the terms on the reverse side of this order are as much a part of the agreement as if written on this side and no other verbal understandings or promises whatsoever are a part of this agreement."

By this language, Thompson led

Grady to believe all of the terms and conditions of this sale were contained within the purchase order and not in the retail installment sales contract.

The trial court found that the warranty disclaimer found on the purchase order was not "conspicuous." R.C. 1301.01(J) defines conspicuous: "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.* * *" The disclaimer found on the purchase order was not accentuated by any difference in color or size of type from that found in the rest of the purchase order, nor was it set off by a border, indentation, or other distinctive characteristic. Further, the area where the disclaimer was located was written over by the sales agent for Thompson so as to completely obstruct the reading of any written material in that area.

There is substantial credible evidence to support the trial court's findings that the disclaimer found in the purchase order was not conspicuous as required by R.C. 1302.29(B) and was, therefore, invalid.

The question then turns on the effect, if any, of the disclaimer of warranties found on the reverse side of the retail installment sales contract. The trial court found that this disclaimer, although conspicuous, did not cure the invalidity of the disclaimer found in the purchase order. We agree.

Thompson, by its own words, limited the terms and conditions of the sale to those found in the purchase order; it cannot then attempt to change the terms and conditions of the sale by a collateral agreement. To the extent that the purchase order and the retail installment sales agreement are consistent, or where the retail installment sales agreement covers items collateral to the purchase order such as the finance terms, the terms and conditions of the retail installment sales agreement are valid and binding. However, where the purchase order and the retail installment sales agreement are in conflict, or the retail installment sales agreement is used to add to or change the terms of the sale, the retail installment sales agreement is invalid. The disclaimer in the purchase order being invalid, the disclaimer in the retail installment sales agreement is inconsistent with the terms and conditions of the sale as set forth in the purchase order and cannot be given effect. R.C. 1302.05(B); *Camargo Cadillac Co.* v. *Garfield Ent., Inc.* (1982), 3 Ohio App. 3d 435; R.C. 1302.29(A).

Appellant's first assignment of error is overruled.

Thompson's Assignment of Error II

"The trial court erred in awarding judgment against appellant because appellee [Grady] did not allow Al Thompson Chevrolet, Inc., the opportunity to cure defects which allegedly existed in the subject vehicle."

R.C. 1302.52(B) provides a seller an opportunity to "cure" defects in the item tendered when the buyer rejects a nonconforming tender which the seller had reasonable ground to believe would be accepted. If the seller reasonably notifies the buyer, the seller may have a reasonable time to substitute a conforming tender or "cure" the defects in the item tendered.

What is a "reasonable" time to "cure" the defects in the item tendered is a question of fact dependent upon the nature, purpose, and circumstances of the action taken to cure the defect. R.C. 1301.10(B).

The Ohio Supreme Court, in *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc.* (1983), 5 Ohio St. 3d 181, 186, quoted with approval the words of the Supreme Court of Alabama stated in *General Motors Corp.* v. *Earnest* (1966), 279 Ala. 299, 302, 184 So. 2d 811, 814:

" ' * * * at some point after the pur-

chase of a new automobile, the same should be put in good running condition, that is, the seller does not have an unlimited time for the performance of the obligation to replace and repair parts.' * * * "

The trial court determined that Grady had given Thompson adequate opportunity to cure the defects complained of. The trial court's opinion recites numerous attempts by Grady to work with Thompson to have the problems with her vehicle repaired; Thompson's responses indicate either an unwillingness or inability to promptly cure the vehicle's defects.

Again, there is substantial credible evidence contained in the record to support the trial court's findings; this court will not substitute its judgment for that of the trier of fact. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O. 3d 261].

Thompson's Assignments of Error

"III. Even if appellant was liable on appellee's breach of warranty claims, the trial court erred in awarding damages in an amount greater than that permitted by Section 1302.88(B) of the Ohio Revised Code.

"IV. Even if appellant is liable for damages to appellee, the trial court erred in awarding judgment on the third-party complaint in an amount which exceeded General Motors Acceptance Corporation's claim for damages in its complaint against appellee."

Grady's Cross-Assignments
of Error

"II. The trial court erred holding that the disclaimer of implied warranties in the retail sales installment contract was effective as to General Motors Acceptance Corporation.

"III. The trial court should have awarded Connie Grady judgment against GMAC in the amount of $174.92 and against Al Thompson in the amount of $561.00."

The automobile purchased by Grady from Thompson was financed by means of an installment contract which Thompson assigned to GMAC. The installment contract contained a notice of preservation of claims and defenses as follows:

"Notice: Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

"The preceding notice applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract."

This notice is required by Section 433.2, Title 16, C.F.R., and supplements R.C. 1317.031 and 1317.032.

Indeed, the assignment between Thompson (seller) and GMAC includes the following provisions:

"Seller agrees to indemnify GMAC for any judicial setoff or loss suffered as a result of a claim or defense of Buyer against Seller.

"If this contract is rescinded by court order, Seller shall pay GMAC the full amount GMAC paid to purchase it."

Therefore, by both contract and statute, any claims or defenses which the debtor could assert against the seller are also valid defenses against the holder of the installment agreement. Any loss resulting to GMAC as a result of a successful claim or defense asserted by Grady may be recovered by GMAC from Thompson in the appropriate action.

All of the parties to the suit below being before this court, we exercise our authority to modify the judgment of the

trial court to bring said judgment in alignment with the principles set out above. App. R. 12(B).

The trial court, having found the purported disclaimer of warranty invalid, found for Grady on the issue of breach of implied warranty of merchantability. This being a valid defense of the buyer against the seller, the same is also a valid defense against the holder of the note, GMAC. Therefore, the trial court erred in granting judgment against Grady in favor of GMAC. Cross-appellant's second assignment of error is well-taken and the judgment of the trial court is modified to reflect judgment in favor of Grady and against GMAC. GMAC's suit against Grady is dismissed at plaintiff's cost.

The question remaining is whether Grady is entitled to a return of her monies paid to GMAC for the first month's payment ($174.92) and to Thompson as the down payment ($561). There is no question that had Grady chosen to seek revocation of the sales contract, she would have been entitled to a full return of her money. R.C. 1302.85(A).

Thompson argues that because Grady framed her third-party complaint as one for breach of implied warranty, rather than seeking revocation of the contract, she is precluded from receiving a full return of her purchase price. We do not agree.

This court has previously stated:

"* * * [T]he measure of damages for breach of warranty need not be limited to the difference between the value of the goods accepted and the value they would have had if they had been [as] warranted. Any loss resulting from the breach may be recovered and may be determined 'in any manner which is reasonable [R.C. 1302.88(A)].' " *T.R.C. Industries, Inc.* v. *Industrial Capital Machinery, Inc.* (Nov. 24, 1982), Summit App. No. 10478, unreported, at page 3.

The monies expended by Grady are claims against the seller and GMAC arising out of the seller's breach of implied warranty. R.C. 1302.88 allows for the recovery of additional damages that are shown to have been proximately caused by the seller's breach. While R.C. 1302.88(B) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty, it is not intended as an exclusive measure. Official Comment 3 to R.C. 1302.88.

The trial court found the loss of Grady's down payment to be an item of economic damage proximately caused by the seller's breach of warranty. We agree. The same rationale also applies to hold GMAC liable to Grady for the return of the payment made. Grady's decision to sue under the theory of breach of implied warranty was not a conscious decision on her part to accept nonconforming goods and sue for the difference in value; rather, Grady's choice of remedies was occasioned by GMAC's repossession of the automobile.

R.C. 1301.06(A) states:

"The remedies provided by [Chapter] * * * 1302 * * * of the Revised Code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed * * * ."

Cross-appellant Grady's third assignment of error is well-taken. The judgment of the trial court against Thompson and in favor of Grady up to the amount of $561 is affirmed, and judgment is entered in favor of Grady and against GMAC in the amount of $174.92. The judgment of the trial court against Thompson and in favor of Grady in excess of $561 is vacated. Due to Grady's successful assertion of the defense of breach of implied warranty of merchantability against GMAC, Grady can establish no damages attributable to Thompson's breach beyond the loss of her down payment. Appellant Thomp-

son's third and fourth assignments of error are overruled.

### Grady's Cross-Assignment of Error I

"The trial court erred in holding that the sale of plaintiff's collateral was done in a commercially reasonable manner."

Based upon the disposition of cross-appellant's second and third assignments of error by this court, cross-appellant can show no error prejudicial to her position arising out of the sale of the collateral. This assignment of error is overruled.

The judgment of the trial court is modified as hereinbefore stated and, as modified, is affirmed.

*Judgment affirmed as modified.*

GEORGE, P.J., and MAHONEY, J., concur.