931 F.2d 56
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth E. NEUFER, Plaintiff-Appellant,
v.
VIDEO GREETINGS, INC., Harmon Cogert, Defendants-Appellees.
 No. 90-3272.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1991.
 
 Before KENNEDY and RYAN, Circuit Judges, and FEIKENS, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Kenneth Neufer ("plaintiff") brought suit against Video Greetings, Inc. ("VGI") and its president, Harmon Cogert, alleging several claims arising out of a breach of a franchise and purchase agreement relating to video booths. VGI counterclaimed to enforce the terms of the parties' agreement. After a bench trial, the court held against plaintiff on its claims and for VGI on its counterclaim. For the following reasons, we VACATE the decision of the District Court and REMAND for further proceedings.
 
 I.
 A.
 
 2
 On February 17, 1987, plaintiff filed suit against VGI and Harmon Cogert ("Cogert"), president of VGI, in his personal capacity. Plaintiff made numerous allegations: that VGI breached its contract with plaintiff (counts 1 & 2); that VGI interfered with a business opportunity plan in violation of Ohio law (count 3); that VGI and Cogert fraudulently misrepresented various aspects of the booths and franchises (count 4); that VGI and Cogert violated Ohio's deceptive trade practices law (count 5); and that the contract between VGI and plaintiff is unenforceable because it is an adhesion contract (count 6). Based on these allegations, plaintiff sought recission of the contract and restitution, monetary damages and attorney's fees. Plaintiff thereafter withdrew voluntarily count 3. VGI counterclaimed against plaintiff for the remaining amount owed for one of the booths sold to plaintiff.
 
 
 3
 On April 17, 1987, plaintiff moved pursuant to Federal Rules of Civil Procedure 65 for a preliminary injunction against defendants in the nature of an order sequestering $34,900.00, the amount necessary to satisfy plaintiff's requested remedy of restitution. Plaintiff made this motion based upon statements indicating that VGI was having financial difficulties. On September 25, 1987 and in response to this motion, VGI presented to the District Court its balance sheet and statement of income for the financial year ended as of May 31, 1987. These financial documents were compiled by an accounting firm[1] and showed that plaintiff was solvent as of May 31, 1987. On October 30, 1987, the District Court denied plaintiff's motion.
 
 
 4
 A trial was conducted on March 22, 1989. Immediately prior to the beginning of trial, Cogert informed the court that VGI was insolvent and therefore judgment-proof. After a bench trial, the District Court dismissed counts 4, 5 and 6 against VGI and all counts against Cogert. The District Court granted judgment in favor of VGI on counts 1 and 2 of plaintiff's complaint, and granted judgment in favor of VGI on its counterclaim. Plaintiff filed this timely appeal.
 
 B.
 
 5
 VGI is a corporation which manufactures booths containing specialized video equipment for the purpose of providing an economic and efficient method of correspondence using a video cassette medium. To promote the sale of these booths, VGI assigned "exclusive territories" to its customers. It advertised its product and services in several publications including the Wall Street Journal. Plaintiff, an Ohio resident with little business experience, responded to one of these advertisements and sought to establish a franchise. The parties executed a contract on November 21, 1986. Under the relevant terms of the agreement, VGI granted plaintiff an exclusive operating territory in parts of Ohio in exchange for plaintiff's promise to purchase ten booths at $15,000 per booth over a nine-month period. Plaintiff signed a customer order for two booths at the time this contract was executed.
 
 
 6
 The documents constituting the parties' contract contain several warranties made by VGI concerning the booths. On the reverse side of the customer order, VGI warrants the following:
 
 
 7
 VGI warrants that all equipment pursuant to this order will, at the time of delivery, be free from defects in material and workmanship under normal use and service and will conform to VGI applicable standard written specifications. VGI['s] sole obligation hereunder shall be limited to repair or replacement, at its option, of any of that equipment which, during a period of six months from the date of delivery, is found by VGI inspection to be defective in workmanship or materials. Any shipping costs incurred pursuant to this warranty shall be paid by Customer. This warranty is given to and the rights hereunder may be asserted by VGI Customers only and not by customers of its Customer or user[s] of its Customer's product.
 
 
 8
 THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
 
 
 9
 Joint.App. at 81. A separate document also provides a warranty by VGI that is longer in duration but more limited in scope:
 
 
 10
 The quality in the design and manufacture of [VGI's] products is unsurpassed. Consequently, as the only manufacturer in this industry we provide warranty coverage to all our customers.
 
 
 11
 VIDEO GREETINGS, INC. warrants its systems to be free from defects in material and workmanship, that affects its functionability, for a period of one year of normal and ordinary use....
 
 
 12
 VIDEO GREETINGS, INC. or its authorized representatives will replace or repair (at Video Greeting's option) any defective materials except in cases where components such as video recorders, TVs, etc., have individual warranties by the manufacturer. In such cases, those manufacturers will honor warranty.
 
 
 13
 Id. at 83.
 
 
 14
 VGI shipped the first booth to plaintiff during the first two weeks of December 1986. Plaintiff received the booth in an inoperable condition. Upon inspection, plaintiff discovered numerous disconnected wires and, after several phone calls to VGI, succeeded in repairing the booth. According to a stipulation of the parties, this booth later jammed. Notwithstanding this stipulation, the District Court concluded that this booth did not jam but continued to operate. VGI shipped the second booth some time shortly after Christmas 1986, and it too arrived in an inoperable condition. VGI sent a technical representative to Ohio in an effort to determine and remedy the problems, but the representative was unable to repair the booth during his two-day visit and returned to California. On January 14, 1987, the technical representative sent plaintiff the necessary parts and instructions to repair the booth. Plaintiff attempted unsuccessfully to repair this booth.
 
 
 15
 VGI shipped to plaintiff a third booth during the first week of January 1987.[2] This booth operated initially, but the television monitor blew out shortly thereafter. VGI sent plaintiff the manufacturer's warranty so that he could take the necessary steps to replace the monitor. Apparently this step was inadequate, and VGI then sent plaintiff a new monitor which placed this booth in an operable condition.
 
 
 16
 Thus, VGI sent plaintiff three booths over a six-week period, two of which arrived in an inoperable state and one of which broke shortly after receipt. Two of these booths were fixed shortly after discovering the problem, but one booth was not repaired. To date, it appears that only one of the three booths operates. Based on these events, plaintiff became dissatisfied with VGI's performance under the contract and sought to rescind the contract on January 21, 1986. VGI refused and these proceedings ensued.
 
 II.
 
 17
 Plaintiff contends that the District Court committed four errors. First, the District Court erred in making findings of fact contrary to the facts stipulated by the parties. Second, the District Court erred by dismissing plaintiff's allegation of fraudulent misrepresentation by defendants to plaintiff in order to consummate the instant contract. Third, the District Court erroneously concluded that plaintiff was not entitled to recission of the contract. Finally, the District Court erred by dismissing Cogert in his personal capacity as a party to this suit and by granting Cogert's motion to quash a subpoena subsequent to trial.
 
 
 18
 We address the issue of breach and recission first. The District Court construed plaintiff's complaint to seek relief based on two legal bases: breach of contract and revocation of acceptance. Without citing any authority, the District Court held in favor of VGI. On the issue of breach, the court concluded that VGI's warranty was limited to the warranties provided by the manufacturers of the components comprising the booths. The District Court further held that the contract reserved to VGI the right to cure any defects within a six-month period. This time had not yet expired at the time plaintiff brought this action. Thus, plaintiff brought this claim prematurely.
 
 
 19
 On the issue of revocation of acceptance, the court concluded that revocation is not permissible prior to the expiration of the six-month period established by the warranty. The District Court read the warranty as contemplating repair service by the manufacturers of the components based on their independent warranties and not by VGI. Because VGI had no contractual obligation to service the booths, its failure to provide repair service did not substantially impair the value of the booths.[3] Under such circumstances, revocation of acceptance is not permitted. Hence, in arriving at its holding, the District Court ultimately relied upon its interpretation of the operation and scope of the warranty provided by VGI in the contract.
 
 
 20
 The interpretation and construction of a written contract are matters of law, thus allowing de novo review. Lancaster Glass Corp. v. Philips ECG, Inc., 835 F.2d 652 (6th Cir.1987). Based on this standard, we conclude that the District Court's interpretation of the parties' contract is erroneous.
 
 
 21
 First, the purpose of the time period established by the warranty is to restrict the time in which plaintiff can present a claim to VGI. It does not purport to establish the time VGI has to cure a defect once a claim is presented. The contract is silent as to the time VGI has to cure a defect once plaintiff gives notice. The warranty provision obligates VGI "to repair or replacement ... of any of that equipment which, during a period of six months from the date of delivery, is found ... to be defective." Joint App. at 81. This sentence cannot be read as giving VGI six months to make any repairs. Rather it limits VGI's liability to repair defects discovered within six months of delivery.
 
 
 22
 Second, contrary to the District Court's conclusion, VGI did provide a warranty independent of the manufacturers' warranties. On the back of the customer order, VGI makes no reference to manufacturers' warranties, but does state that its "sole obligation" is limited to repair or replacement of defective parts. In a separate document entitled "Warranty," VGI warranted that it, or its authorized representatives, would repair or replace any defective materials unless the defective part was covered by a manufacturer's warranty. Taken together, these provisions clearly and unambiguously obligate VGI to service all defects which plaintiff brings to VGI's attention during the warranty period and which are not covered by a manufacturer's warranty.
 
 
 23
 We now apply relevant Ohio law to this construction of the parties' contract in light of plaintiff's claims. Unfortunately, plaintiff makes little, if any, effort to conform his claims to the language or structure of the Uniform Commercial Code ("UCC") as adopted by Ohio. Among other allegations and remedies, plaintiff's complaint seeks damages and recission of the contract based on VGI's breach of contract. The UCC as adopted by Ohio no longer employes the term "recission," however. The Official Comment to section 1302.66 states:
 
 
 24
 [This] section no longer speaks of "recission," a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as "revocation of acceptance" of goods tendered under a contract for sale....
 
 
 25
 Ohio Rev.Code Ann. Sec. 1302.66 (Anderson 1979) Comment 1. The District Court construed plaintiff's complaint to allege a revocation of acceptance and apparently applied section 1302.66 (UCC 2-608). However, we find that section 1302.70 (UCC 2-612) is the proper starting point for analysis of this contract because it is an installment contract.[4]
 
 
 26
 Ohio law provides a buyer with several alternatives upon receiving a shipment of non-conforming goods under an installment contract:
 
 
 27
 (B) The buyer may reject any installment which is non-conforming if the non-conformity substantially impairs the value of that installment and cannot be cured or if the non-conformity is a defect in the required documents; but if the non-conformity does not fall within division (C) of this section and the seller gives adequate assurance of its cure the buyer must accept that installment.
 
 
 28
 (C) Whenever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a non-conforming installment without seasonably notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments.
 
 
 29
 Ohio Rev.Code Ann. Sec. 1302.70(B) & (C) (Anderson 1979) (UCC 2-612). Under subsection (C), a contract can be cancelled if the non-conforming goods "substantially" impair the value of the entire contract. The District Court did not consider this issue at trial, but we conclude that plaintiff's complaint, liberally construed, alleges this claim. Thus, the District Court on remand should consider whether the cumulative effect of VGI's performance under the contract, based on the totality of the circumstances including several shipments of non-conforming goods and the limited actions taken by VGI to fulfill its warranty obligations, substantially impaired the value of the whole contract as to plaintiff.
 
 
 30
 If the District Court concludes that cancellation of the entire contract is not permissible, it must next consider whether plaintiff can rightfully reject or revoke its acceptance for each non-conforming installment it received.[5] The District Court previously decided this issue in VGI's favor based on the erroneous construction of the parties' contract regarding the time given VGI to repair any defects. The parties' contract is silent as to the time allowed VGI to effect a repair, but Ohio law states that "[w]hat is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." Ohio Rev.Code Ann. Sec. 1301.10(B). Ohio courts have construed this language to require a buyer to give a seller an "adequate opportunity" to cure defects. See General Motors Acceptance Corp. v. Grady, 27 Ohio App.3d 321, 324 (1985). On remand, the District Court must separately consider the actions of the parties surrounding each non-conforming installment to determine whether rejection or revocation of acceptance is appropriate for each installment.
 
 
 31
 Finally, plaintiff is not foreclosed from recovering damages even if the District Court concludes on remand that plaintiff cannot revoke its acceptance for a particular installment. Ohio law allows a buyer to accept non-conforming goods and then sue the seller for breach of warranty. Ohio Rev.Code Ann. Sec. 1302.88 (Anderson 1979) (UCC 2-714). In such an action, a buyer may recover as damages "the difference ... between the value of the goods accepted and the value they would have had if they had been as warranted." Id. Sec. 1302.88(B)
 
 
 32
 In sum, the District Court must consider several issues on remand pertaining to the claim of VGI's breach of contract. Initially, the District Court must consider whether plaintiff is entitled to the right of cancellation pursuant to section 1302.70(C) based on VGI's performance under the contract. Answering this first issue in the negative, the court must next consider whether plaintiff is entitled to revocation of his acceptance for or rejection of each non-conforming installment sent by VGI. Finally, for those installments that plaintiff cannot revoke his acceptance, the court must determine whether plaintiff is entitled to damages based on VGI's alleged breach of warranty.
 
 
 33
 We further conclude that the District Court erred in another matter which impacts on the analysis it must conduct on remand. We agree with plaintiff that the court erred by finding, contrary to the stipulation of the parties, that booth # 1 operaterd as intended after it was repaired. The parties specifically stipulated that booth # 1 jammed subsequent to repair. Joint App. para. 9, at 76. On remand, the District Court must incorporate the relevant facts as stipulated by the parties or support its factual finding to the contrary with reference to testimony or exhibit.
 
 
 34
 Plaintiff also attributes error to the court's finding regarding VGI's representations as to its ability to uphold its warranties in Ohio. The parties stipulated that VGI indicated to plaintiff that it had repairmen or contractors in the Cleveland area which plaintiff could call upon to repair the booths. Joint App. para. 5, at 74. The parties further stipulated that VGI subsequently admitted that it had no repairmen in this area who could repair the booths. Id. para. 9, at 75. The District Court, however, found that VGI represented that it "would provide any and all technical support and continuing assistance necessary to enable [it] to establish and maintain the distributorship business, including technical help in setting up the machines and in troubleshooting problems....," Id. para. 5, at 32-33, and that VGI "had the ability to service all machines sold in the United States by sending a technician to the Buyer's local and by using manufacturer's service outlets." Id. para. 10, at 34.
 
 
 35
 We do not think that the District Court erred in this matter. While we agree with plaintiff that the District Court deviated from the parties' stipulated facts, we do not arrive at the conclusion urged by plaintiff. To be sure, an agent of VGI both stipulated and testified that VGI has no service representatives in Ohio contrary to an oral representation made prior to executing the contract. Yet, this does not mandate recission. We hold that this representation is not material to the contract. Cardinal v. Dimit, 69 N.E.2d 65 (Ohio Ct.App.1945) (holding that fraud sufficient to void a contract must relate to a material matter in the contract). Plaintiff's primary complaint centers on the location of the service representatives, and not on VGI's ability to provide service. We do not think that the location of the representatives is material, so long as VGI provides service in accordance with the terms of the agreement. See Cantor v. Cantor, 174 N.E.2d 304 (Ohio Prob.1959) (allowing recission if breach of contract goes to the root of contract).
 
 
 36
 This issue of fact is also relevant to the another issue raised by defendants: the court's alleged error in dismissing plaintiff's fraudulent misrepresentation claim. One of the elements of fraudulent misrepresentation is that the representation be material to the transaction at hand. Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 462 N.E.2d 407 (1984). Plaintiff alleges that VGI's representations concerning the geographic scope of its support organization constituted fraud. For purposes of the fraudulent misrepresentation claim, we conclude that these representations are not "material" based on the analysis we employed to determine whether the District Court's deviation from the stipulated facts concerning these representations constituted error.
 
 
 37
 Plaintiff also contends that the District Court erred when it dismissed Cogert in his personal capacity and granted his motion to quash a subpoena subsequent to trial. We find no error in these actions. Cogert at all times acted as an agent of VGI, and thus as agent for a disclosed principal there are no grounds upon which he can be held personally liable in this action.
 
 
 38
 Finally, plaintiff raises several issues for the first time on appeal. These issues include whether VGI's attempt to exclude certain warranties is unconscionable; and whether the warranties made by VGI failed of their essential purpose. We will not address issues raised for the first time on appeal.
 
 III.
 
 39
 For the foregoing reasons, we VACATE the District Court's judgment and REMAND this case for further proceedings in accordance with this opinion.
 
 
 
 *
 The Honorable John Feikens, Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 A compilation is limited to presenting in the form of financial statements information that is the representation of management. An accounting firm performs no audit or review of the information and thus cannot express an opinion or any other form of assurance as to the accuracy of the information provided
 
 
 [2]
 Plaintiff requested and VGI agreed that plaintiff only had to pay $5,500 of the $15,000 for this booth prior to receipt by plaintiff. The $9,500 owed by plaintiff for this third booth constitutes the basis for VGI's counterclaim
 
 
 [3]
 In certain specified circumstances, Ohio law allows a buyer to cancel an installment contract if the non-conformity of the unit or units substantially impairs the value of the entire contract to the buyer. Ohio Rev.Code Ann. Sec. 1302.70 (Anderson 1979)
 
 
 [4]
 An installment contract is defined as "one which requires or authorizes the delivery of goods in separate lots to be separately accepted...." Ohio Rev.Code Ann. Sec. 1302.70(A) (Anderson 1979) (UCC 2-612). The instant contract contemplated the purchase of ten booths by plaintiff, two booths initially and then one booth per month thereafter. This arrangement falls within the statutory definition of "installment contract."
 
 
 [5]
 The UCC distinguishes between "rejection" and "revocation of acceptance." Compare Ohio Rev. Code Ann. Sec. 1302.61 (UCC 2-602) with id. Sec. 1302.66 (UCC 2-608). However, we do not think this distinction is important for purposes of our analysis. First, plaintiff may reject or revoke his acceptance based on similar circumstances. Section 1302-70(b) (UCC 2-612), dealing with installment contracts, allows a buyer to "reject" a particular installment whose non-conformity "substantially impairs the value of that installment and cannot be cured...." Id. Sec. 1302.70(B). Section 1302.66(A)(1) (UCC 2-608), dealing with revocation of acceptance in whole or in part, allows a buyer to "revoke his acceptance" of a non-conforming lot whose non-conformity substantially impairs its value to him if he originally accepted the goods "on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured...." Thus, rejection and revocation of acceptance both require substantial impairment and a failure to cure. Second, "a buyer who so revokes [his acceptance] has the same rights and duties with regard to the goods involved as if he had rejected them." Id. Sec. 1302.66(C). Third, recovery for damages based on either rejection or revocation of acceptance is based on the same statutory provision. See id. Sec. 1302.85 (UCC 2-711). Finally, there is no indication that section 1302.70 (UCC 2-612) is the exclusive remedy for installment contracts, and that a party may not also seek to revoke its acceptance under section 1302.66 (UCC 2-608)